RONADE ASSOCIATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT, v. DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT, DIVISION OF WATER POLICY AND SUPPLY OF THE STATE OF NEW JERSEY (AN ADMINISTRATIVE AGENCY OF THE STATE OF NEW JERSEY), RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 6, 1950—Decided March 29, 1950.

134

---

Before Judges JACOBS, EASTWOOD and JAYNE.

*Mr. George W. C. McCarter* argued the cause for the appellant (*Mr. Abraham Warren,* attorney).

*Mr. Robert Peacock* argued the cause for the respondent (*Mr. Theodore D. Parsons,* Attorney General, attorney).

The opinion of the court was delivered by

EASTWOOD, J..A. D. This is an appeal from the judgment of the Division of Water Policy and Supply of the State Department of Conservation and Economic Development denying appellant's application for a permit to construct a building over a small stream with a supporting pier in the middle of the stream.

The appellant is the owner of a tract of land situate in the City of Plainfield and the Borough of North Plainfield, through which flows a non-tidal stream known as "Green Brook" which forms the boundary line between the aforementioned municipalities. Desiring to construct a one-story building over Green Brook, appellant filed the following appli-

cation with the Department of Conservation and Economic Development, Water Policy and Supply Division (hereinafter referred to as the "Council"):

"In compliance with the provisions of Title 58:1–26 of the Revised Statutes RONADE ASSOCIATES, INC. 26 Journal Square, Jersey City, N. J. hereby makes application for the approval of plans and for the issuance of a permit for the construction of a Bridge supporting a Store Building in, along or across Green Brook at a point Watchung Avenue Plainfield * * * in accordance with drawings and other data filed with this application and made part hereof. * * *"

A public hearing was held and evidence was proffered by the proponents and the objectors. According to the plans submitted with the appellant's application, to support its structure, the proposal contemplated the construction of a central pier in the bed of the stream. The only question for the Council's determination was whether the *proposal as submitted by appellant* should be granted.

The Borough of North Plainfield and the City of Plainfield opposed the granting of the requested permit on the grounds of alleged interference with the flow of the stream under flood conditions, danger arising from the impounding of the waters by such a structure and the resulting damages therefrom, and conflict with proposed plans of the City of Plainfield to widen Watchung Avenue and construct an elevated through-way over Green Brook.

The Council denied appellant's application and judgment was entered determining that:

"* * * from the testimony presented before this Council and in the opinion of said Council, that the granting of the permit sought aforesaid would be contrary to public interest, and that the erection of such a structure over a stream of the magnitude of Green Brook in the developed areas of Plainfield and North Plainfield, New Jersey, would increase danger from waters impounded or likely to be impounded or affected by such structure and would create a hazard to such municipalities and the public and property owners at large in said municipalities in case of flood as aforesaid; * * *"

The appellant contends that the Council's statutory authority under *R. S.* 58:1–26 is merely regulatory and it has un-

lawfully extended its jurisdiction by prohibiting the construction of a building over Green Brook; that the bed of the stream above tidewater is within its ownership and the Council's judgment depriving it of the use of its land without just compensation is in violation of Article I, Paragraphs 1 and 20, of the Constitution of New Jersey and the Fourteenth Amendment to the Constitution of the United States. The respondent vigorously disputes appellant's contentions.

*R. S.* 58:1–26 is the controlling statute and provides, *inter alia:*

"No structure within the natural and ordinary high water mark of any stream shall be made by any public authority or private person or corporation without notice to the commission, and in no case without complying with such conditions as the commission may prescribe for preserving the channel and providing for the flow of water therein to safeguard the public against danger from the waters impounded or affected by such structure, and this prohibition shall apply to any renewal of existing structures. No such approval by the commission shall impair or affect any property rights, otherwise existing, which might be invaded by the construction or maintenance of any such structure.

"The commission may, whenever in its judgment public safety so requires, and after a hearing either on its own motion or upon complaint, make and serve an order directing any person, corporation, officer or board constructing, maintaining or using any such structure in any of the waters of this state to remove or repair it within such reasonable time and in such manner as shall be specified in the order, and every such person, corporation, officer or board shall obey, observe and comply with the order and with the conditions prescribed by the commission for preserving the channels of streams and for safeguarding the public against danger from waters impounded by structures hereinbefore referred to."

The structures "within the natural and ordinary high water mark" of Green Brook according to the plans submitted, are the erosion walls and the central supporting pier. The testimony before the Council, upon which the denial of the permit was predicated, impressed the Council that such a construction was against the public interest in that it "* * * would increase danger from waters impounded or likely to be impounded or affected by such structure and would create a hazard to such municipalities and the public and property owners at large in said municipalities in case of flood * *. *."

In support of its application, Mr. Robert S. Goldfarb, president of the appellant corporation, and its architect, Herbert F. Verse, testified to preliminary conferences with Mr. George R. Shanklin, Assistant Chief Engineer for the Council. Conforming to Mr. Shanklin's suggestions, plans for the building in question were prepared and an application based on those plans was submitted to the Council. Mr. Shanklin was called as a witness for the appellant and corroborated generally the testimony given by Mr. Goldfarb and Mr. Verse, but testified that he had no authority to bind the Council; that plans based on his recommendations were required to be submitted to the Chief Engineer and final action was subject to the approval or disapproval of the Council. Mr. Samuel Meyers, owner of a building in the neighborhood of appellant's property, testified that his building had not suffered from any of the flood conditions during his ownership covering a period of approximately twenty years, and that he favored the construction applied for. Mr. Meyer admitted, however, that he was planning to submit a somewhat similar application to the Council to construct a building over Green Brook on a part of his property. In opposition to the application, Mr. John L. McDermott, an architect and engineer, Chairman of the Planning Board of the City of Plainfield, testified that in his opinion such a structure would aggravate flood conditions and, in addition to the community danger, would place the building itself in jeopardy because of the floor elevations in that the building would act as a dam and thereby seriously aggravate a flood upstream. Mr. McDermott's testimony was supported by Mr. Oscar O. Kuentz, member of the Plainfield Planning Board and a United States engineer officer with considerable flood control experience. Mr. George R. Shanklin testified that the construction proposed by appellant was designed on a basis of "* * * a probable 25-year flood under present conditions, and for possibly the 25-year flood under the future conditions, * * *" and that "If the water overflows its banks by reason of an obstruction of that sort, it would have to rise and flood properties on either side of the building; those in Plainfield adjoining Front Street,

and in North Plainfield. I believe the North Plainfield bank is the lower and it would take the brunt of the flood." Mr. Shanklin testified further that the preliminary estimates of flood conditions indicate that since 1900, there had been three floods greater than the 25-year flood record and one equal thereto.

*R. S.* 58:1–1 *et seq.* created and defined the powers of the Water Policy Commission to pursue a broad policy for the conservation and protection of "surface, subsurface and percolating waters of the state," through control and regulation of "use, development and diversion" of such waters and among the enumerated objects of legislative solicitude was the prevention of floods.

Mr. Justice Heher, speaking for the Court of Errors and Appeals, in *Jersey City v. State Water Policy Com.,* 118 *N. J. L.* 72 (1937), at *p.* 76, said of the Commission's powers:

"This statute is, on well settled principles, to be liberally construed to advance its beneficent policy. While the commission's jurisdiction is special and limited, it possesses such powers as by fair implication and intendment are incident to the authority expressly granted for the attainment of the general legislative policy. * * *"

*Cf. Collingswood v. Water Supply Commission,* 85 *N. J. L.* 673 (*E. & A.* 1914). In the instant case there is sufficient evidence to support the Council's findings that the proposed structure is inimical to the life and property of others in the community; that it poses a danger to neighboring properties in the event of flood conditions. The determination of the Council was not an unreasonable or arbitrary exercise of its regulatory powers, but in furtherance of its police power to promote public safety.

A careful reading of the applicable statute indicates that the Council's authority is of a regulatory nature. *Jersey City v. State Water Policy Com., supra.* Its judgment conforms thereto, the denial being based on its disapproval of the plans submitted by plaintiff. It does not, as contended by plaintiff, prohibit any construction over Green Brook. That question was not before the Council for consideration.

Nor did it attempt to make such a construction of the statute in question.

The appellant contends that respondent's denial of its application amounts to a deprivation of the use of its land without just compensation and without "due process" in violation of Article I, Paragraphs 1 and 20, of the Constitution of New Jersey and the Fourteenth Amendment to the Constitution of the United States. We think there is no merit in this contention. The respondent's denial of the building permit, based on the plans submitted, is not such a prohibition of use of applicant's property as to be a confiscation thereof. Considering with approval the extent of the authority of the Commission under *R. S.* 58:1–26, the Court of Errors and Appeals in *Jersey City v. State Water Policy Com., supra,* at *p.* 75, said: "* * * apart from structural security, these provisions obviously bestow the incidental power necessary to subserve the general statutory objectives * * *" which were held to be the protection of public health, safety and welfare.

The right and duty of the State, either itself or through its municipal subdivisions or the creation of special districts for the purpose, to take steps looking toward the prevention of floodwaters, with their imminent danger to life and destruction of property, have long been recognized. 56 *Am. Jur.,* § 96, *p.* 578. The constitutional guaranties that no person shall be deprived of life, liberty, or property without due process of law, do not limit, and were not intended to limit, the subjects on which the police power of a state may lawfully be exerted. 16 *C. J. S.,* § 571, *p.* 1159. The constitutional guaranty is not intended to interfere with the proper exercise of the police power, nor to prohibit governmental regulation for the public welfare. The due process clause does condition, however, the exertion of the admitted power by a protective assurance that the objective to be attained shall be accomplished by methods consistent with due process in that it shall be for a public purpose; that the law shall be not unreasonable, arbitrary or capricious; that the legislative enactment shall be in conformity with these con-

ditions and not unduly oppressive; that the means selected shall have a substantial relation to the object sought to be attained. The constitutional guaranties relied upon by appellant are not incompatible with the principle, equally vital, because essential to peace and safety, that all property is held under the implied obligation that the owner's use of it will not be injurious to the community and hence subject to the fair exercise of the State's power to make regulations reasonably necessary for health, safety and general welfare. *Nebbia v. New York,* 54 *S. Ct.* 505, 291 *U. S.* 502, 78 *L. Ed.* 940. *Cf. Brandon v. Montclair,* 124 *N. J. L.* 135 (*Sup. Ct.* 1940); affirmed, 125 *N. J. L.* 367 (*E. & A.* 1940). Mr. Justice Roberts, in *Nebbia v. New York,* discussed quite comprehensively the question of the exercise of governmental police power, stating "* * * But neither property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or exercise his freedom of contract to work them harm. Equally fundamental with the private right is that of the public to regulate it in the common interest. * * *" and quoting Chief Justice Marshall, in *Gibbons v. Ogden,* 9 *Wheat.* 1, 203, 6 *L. Ed.* 23, 71; Mr. Justice Barbour, in *New York v. Miln,* 11 *Pet.* 102, 139, 9 *L. Ed.* 648, 662, and Chief Justice Taney, in *License Cases,* 5 *How.* 504, 583, 12 *L. Ed.* 256, 291, in support thereof, Mr. Justice Roberts stated further: "Thus has this court from the early days affirmed that the power to promote the general welfare is inherent in government" and "The court has repeatedly sustained curtailment of enjoyment of private property, in the public interest. The owner's rights may be subordinated to the needs of other private owners whose pursuits are vital to the paramount interests of the community."

We have considered the other grounds advanced by appellant for reversal and find no merit in them.

The judgment is affirmed.